United States District Court
Southern District of Texas

**ENTERED**

August 15, 2025

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JAYDE BRENAE LITTLES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-24-3855 |
| | § | |
| THE UNIVERSITY OF TEXAS M.D. | § | |
| ANDERSON CANCER CENTER, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

M.D. Anderson terminated Jayde Littles, a probationary employee, after finding that Ms. Littles violated company policy on nine separate days in her first three months at work. The week before Ms. Littles was fired, she told M.D. Anderson that she was pregnant. She alleges that she was fired because she was pregnant, not because she repeatedly failed to meet expectations. The pleadings do not support her claim.

Based on the pleadings, the briefing, and the applicable law, the court grants M.D. Anderson's Rule 12(b)(6) motion to dismiss. This case is dismissed, with prejudice, because amendment would be futile. The reasons for this ruling are below.

I.    **Background**

On August 15, 2022, Jayde Littles began a probationary period of employment as a Cord Blood Bank Collector at M.D. Anderson. (Docket Entry No. 25 at 2, 9). On September 27, 2022, M.D. Anderson sent Ms. Littles a letter informing her that she was "being placed on probationary warning due to performance." (*Id.* at 9). The letter stated that Ms. Littles had violated the Probationary Period of Employment Policy on August 22, September 12, September 14, and September 20, in multiple ways. (*Id.*); (*see also id.* at 2). The alleged infractions include using an

unauthorized and unsafe heating device, clocking out too early, failing to follow instructions, reporting to a remote site without proper credentials, taking a parking card without approval, and refusing assigned duties. (*Id.*). Ms. Littles's complaint explains that in her view, each of these incidents was due to a misunderstanding, unintentional or harmless mistakes, or her lack of knowledge about the policies that purportedly prohibited her conduct. (*Id.* at 3). The letter informed Ms. Littles that she would be terminated if she did not "demonstrate immediate and sustained improvement." (*Id.* at 9).

Ms. Littles continued to act in a way that M.D. Anderson believed violated its policies, but that Ms. Littles believed was harmless or justified. M.D. Anderson alleges that on September 30, Ms. Littles "blurted out" public health information "in a public area." (*Id.* at 17). Ms. Littles claims that "[a]ll medical details involving patients were mentioned in a non-public setting." (*Id.* at 3). M.D. Anderson alleges that on October 5, Ms. Littles was "observed in a group setting . . . laughing at [her] trainer due to their difficulty translating terms/phrases from Spanish to English." (*Id.* at 17). Ms. Littles claims that her "laughter was general and not aimed at the trainer." (*Id.* at 3). M.D. Anderson alleges that on October 19 and 21, Ms. Littles continued to wear non-uniform outerwear after her manager told her that the outerwear was inappropriate for her role and responsibilities. (*Id.* at 17). Ms. Littles claims that she "wore outerwear due to workplace temperature and no official guidance was provided." (*Id.* at 3).

For most of the infractions, Ms. Littles does not dispute that she violated official policy, but rather asserts that she was not aware of that policy. *See, e.g.*, (*id.* at 3) (Ms. Littles was not aware that using the parking card required prior approval, was not provided "official guidance" on outerwear, and was "not informed of any policy" prohibiting her heating device). Ms. Littles's

complaint explains her reasons for doing each act that allegedly violated policy, but she generally does not dispute doing those acts.

Ms. Littles alleges that she "submitted an application for disability accommodation" on November 7, 2022. (*Id.* at 2) (citing Exhibit C). The cited exhibit is a Workplace Accommodation Request Form signed by Ms. Littles on November 11, 2022, stating that was pregnant. (*Id.* at 10–16). The exhibit also includes a letter from M.D. Anderson dated November 7, 2022, stating: "The HR Leave Center was recently informed that you may have a condition which may qualify under MD Anderson's Accommodating Disabilities in the Workplace Policy." (*Id.* at 16).

M.D. Anderson alleges that on November 8, 2022, Ms. Littles violated the Attendance Policy and Guidelines by leaving for an appointment at 10:15 a.m. without approval and then failing to return to work after the appointment. (*Id.* at 17). Ms. Littles claims that she "left work for a necessary medical appointment related to her pregnancy," "[h]er supervisor was aware of the appointment in advance," and "[n]o malicious intent or policy violation occurred." (*Id.* at 3).

Ms. Littles did not tell her supervisor, Krystle Pool Sam, that she was pregnant until Friday, November 11, 2022. (*Id.* at 4). Two days before that, on November 9, 2022, Ms. Sam sent an email to a Human Resources representative, Candace White, with the subject "Prob Term Letter." (*Id.* at 18).[1] On Monday, November 14, 2022, the following messages were exchanged between Ms. Sam and the Human Resources representative:

---

[1] The email is attached to Ms. Littles's second amended complaint, (Docket Entry No. 25 at 18), as is Ms. Littles's November 14, 2022, termination letter, (*id.* at 17), but it is not clear that the same termination letter was attached to Ms. Sam's email on November 9, 2022.

**Pool Sam,Krystle 1:02 PM:**

Good afternoon,

**Pool Sam,Krystle 1:03 PM:**

I am about to meet with Jayde for the Prob. Term. She contacted me Friday to inform me that she was pregnant. I wanted to ensure that this would not be a problem or concern in regards to the term.

**White,Candace Y 1:58 PM:**

The timing may not be ideal. However, the probationary term was planned prior to her notification to you. In addition, she had already received a probationary warning. You just want to make sure that all of the reasons you wrote her up was based on her performance, conduct, or attendance.

(*Id.* at 19). Ms. Littles was terminated that day. (*Id.* at 4).

A November 14, 2022, letter from M.D. Anderson told Ms. Littles that she was being terminated because she had "failed to successfully meet the expectations of the Cord Blood Bank Collector position during [her] probationary period of employment." (*Id.* at 17). The letter explained that Ms. Littles had "received consistent feedback regarding [her] inability to meet expectations" since starting work on August 15, 2022. (*Id.*). The letter referred to a meeting on September 27, 2022, in which an M.D. Anderson representative met with Ms. Littles "to formally review and document the previously stated performance expectations." (*Id.*). The letter stated that "[s]ince that time," Ms. Littles had "continued to be unable to demonstrate and sustain an acceptable level of performance in the essential functions of [her] role," and provided several examples relating to attendance, conduct, and job performance on five different dates. (*Id.*). Her last day at work was November 14, 2022. (*Id.* at 4).[2]

Ms. Littles's original complaint asserted several claims against M.D. Anderson and individual defendants. (Docket Entry No. 1). Her first amended complaint was missing multiple

---

[2] The court does not recount Ms. Littles's race-related allegations because they are not relevant to her pregnancy discrimination claim, the only claim she asserts. In particular, the fact that Ms. Littles sent an email about diversity, equity, and inclusion does not relate to or support the claim she asserts.

pages. (Docket Entry No. 5). With leave from the court, Ms. Little filed her second amended complaint, asserting only one claim—"Violation of Title VII (Pregnancy Discrimination Act)"—against one defendant, M.D. Anderson. (Docket Entry No. 25). M.D. Anderson moved for dismissal for insufficient service and failure to state a claim. (Docket Entry No. 26).

## II.    The Summons Issue

M.D. Anderson moved for dismissal of Ms. Littles's second amended complaint because the summons served on M.D. Anderson was not signed or sealed by the clerk and is undated. (*See* Docket Entry Nos. 26, 26-1). Defects in summonses "are not fatal if they do not prejudice the defendant." *Coleman v. Bank of New York Mellon*, 969 F. Supp. 2d 736, 744 (N.D. Tex. 2013) (quoting reference omitted); *see also Warfield v. Byron*, 137 F. App'x 651, 655 (5th Cir. 2005) (The "absence of the clerk's signature on the summons" is "not fatal if [it] do[es] not prejudice the defendant."). Because M.D. Anderson does not argue that it was prejudiced by the defective summons, the motion to dismiss based on the unsigned and undated summons is denied.

## III.    The Rule 12(b)(6) Motion

The second amended complaint asserts only one claim: "Violation of Title VII (Pregnancy Discrimination Act)." (Docket Entry No. 25 at 5). Ms. Littles's response reiterates "that the Second Amended Complaint asserts a single count: a violation of Title VII, as amended by the [Pregnancy Discrimination Act], based on the alleged discriminatory termination that followed her pregnancy disclosure." (Docket Entry No. 31 at 3). For the reasons stated below, Ms. Littles has failed to state a claim upon which relief can be granted.[3]

---

[3] Although Ms. Littles's response discusses statutes, causes of action, and allegations outside her pregnancy discrimination claim, she repeatedly reiterates that her only claim is that she was illegally terminated because she was pregnant, in violation of Title VII. (Docket Entry No. 31 at 3, 4, 20). She "affirms that she does not bring independent causes of action under the Americans with Disabilities Act (ADA) or for racial discrimination." (*Id.* at 4). She states that her "reference[s] [to] retaliation, racial discrimination, and

### A.      The Rule 12(b)(6) Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).  "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

---

failure to accommodate . . . serve to provide context for the alleged discriminatory environment—not to assert separate, stand-alone claims."  (*Id.* at 20).  The only issue is whether the allegations of pregnancy discrimination under Title VII survive Rule 12(b)(6) scrutiny.

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Because Ms. Littles is representing herself, the court liberally construes her complaint and its allegations.

## B.        The Pregnancy Discrimination Claim

Under Title VII, an employer may not "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  The Pregnancy Discrimination Act specifies that "because of sex," as used in Title VII, includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Id.* § 2000e(k). The Pregnancy Discrimination Act also requires that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id.*

Ms. Littles alleges that M.D. Anderson violated the Pregnancy Discrimination Act because she "was qualified for her position [and] suffered an adverse employment action, and the timing of her pregnancy disclosure and termination presents a clear case of discriminatory intent." (Docket Entry No. 25 at 5).  Because she offers no direct evidence of intentional discrimination, the court will apply the *McDonnell Douglas* burden-shifting framework.  *See Young v. United*

7

*Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015). Under that framework, Ms. Littles can state a prima facie case of discrimination by alleging that she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Santos v. Wincor Nixdorf, Inc.*, 778 F. App'x 300, 302 (5th Cir. 2019) (quoting *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018)).

Ms. Littles has not alleged that she was qualified to be a Cord Blood Bank Collector. To the contrary, her allegations and the evidence attached to her complaint suggest that she repeatedly violated M.D. Anderson's policies within a short period after she began work. (Docket Entry No. 25 at 2–3, 9, 17). She never graduated from her probationary status. She violated policies and consistently failed to meet expectations. The court takes as true her explanations for the intention behind her actions and her lack of knowledge of official policies. *See Ashcroft*, 556 U.S. at 678. But the complaint does not raise a plausible inference that Ms. Littles was meeting M.D. Anderson's expectations for someone in her position. Ms. Littles has also failed to allege that she was replaced by a nonpregnant person or point to similarly situated nonpregnant people who were treated more favorably than she was. Ms. Littles has not alleged a prima facie claim that she was terminated because she was pregnant.

Even if Ms. Littles had satisfied her prima facie burden, her allegations show that M.D. Anderson had ample reason to fire her. The probationary warning letter and termination letter detail Ms. Littles's multiple policy infractions on nine days between August 22, 2022, and November 8, 2022. (Docket Entry No. 25 at 9, 17). These infractions support M.D. Anderson's contention that Ms. Littles consistently failed to meet expectations, warranting termination.

Ms. Littles points to the messages between her supervisor and the Human Resources Department as evidence that the proffered explanation for her termination was a pretext for pregnancy discrimination. The messages do not support Ms. Littles's allegations. The messages align with the other evidence that M.D. Anderson believed the policy violations outlined in the letters warranted termination. The messages are evidence that M.D. Anderson planned to terminate Ms. Littles "prior to her notification" that she was pregnant. (*Id.* at 19). The messages do not raise an inference of discrimination. The only plausible inference raised by the messages is that Ms. Littles was fired for reasons unrelated to her pregnancy.

Lastly, Ms. Littles relies heavily on the timing of her termination—a few days after she told her supervisor that she was pregnant—as evidence of pretext. But the timeline presented by the allegations in her complaint show the opposite. M.D. Anderson was aware of, documenting, and concerned with Ms. Littles's policy infractions as early as August 22, 2022. (*Id.* at 2, 9). Ms. Littles was warned on September 27, 2022, that her failure to "demonstrate immediate and sustained improvement . . . will result in [her] termination." (*Id.* at 9). Three days after receiving the probationary warning letter, Ms. Littles was "reprimanded for allegedly disclosing [public health information] in a public area." (*Id.* at 2). The email attached to her complaint shows that a draft of Ms. Littles's termination letter was sent internally by Ms. Littles's supervisor on November 9, 2022, before the supervisor learned that Ms. Littles was pregnant. (*Id.* at 18). This evidence—all attached to Ms. Littles's complaint—shows M.D. Anderson's escalating responses to Ms. Littles's repeated infractions. Termination was clearly the next step, unrelated to her pregnancy. There are no facts raising an inference of discrimination from the timing of her termination in relation to her disclosure that she was pregnant.

In sum, Ms. Littles was fired shortly after—but not because—she told her supervisor that she was pregnant. Because the complaint does not allege that Ms. Littles was qualified or treated differently than similarly situated individuals, Ms. Littles has failed to state a prima facie case of pregnancy discrimination under Title VII. The allegations do not support an inference that the proffered reason for Ms. Littles's termination was pretextual. Her pregnancy discrimination claim is dismissed, with prejudice, because further amendment would be futile.

## IV.    Conclusion

The motion to dismiss, (Docket Entry No. 26), is granted. Because Ms. Littles has already amended twice, the court concludes that further amendment would be futile. This case is dismissed, with prejudice.

SIGNED on August 15, 2025, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge